Samuels agt. McDonald.

# N. Y. SUPERIOR COURT

## BERNARD SAMUELS, plaintiff, agt. JOHN McDONALD, *et al.*, defendants.

The *commissioners of emigration* are not liable in their official capacity, for loss of baggage belonging to emigrants.

In framing his complaint, under the Code, it seems to be still necessary for a plaintiff to observe, in the statements of facts constituting the cause of action, the distinction between a mere negligent loss and a conversion of the baggage.

A bailee without hire cannot be held liable for loss of baggage, except upon proof showing such a delivery to and acceptance by him of the property as imposes upon him the legal obligation to answer for its safety. Evidence which establishes merely, that according to certain rules and regulations the property should have come into his possession, is insufficient.

*General Term, March,* 1871.

*Before* MONELL, McCUNN *and* FREEDMAN, *JJ.*

THE complaint of the plaintiff against John McDonald, Robert Murray, Cornelius Van Ness and Nicholas Muller, named as defendants therein, alleged as follows:

That on May 24th, 1867, the plaintiff arrived at the port of New York, from Liverpool, in the steamer *Manhattan*, having in his possession several trunks and other personal effects, the property of the plaintiff.

That upon such arrival, and before the said steamer had come to any wharf in the said port, the above named defendants, by their servants and employees, boarded said steamer by means of a small steamboat, and then and there the defendants, claiming to act under some contract, license or permission from the commissioners of emigration, a corporate body established by and under the laws of the state of New York, did, without obtaining the consent of the plaintiff, but claiming the exclusive right to carry and convey the baggage

and personal effects of passengers from said steamship to the city of New York, take into their possession the said trunks and personal effects of the plaintiff, and undertook to carry and convey the same safely to city of New York, and there safely keep the same in the premises occupied by the defendants at Castle Garden in said city, charging as compensation therefor the sum of ten cents for each package not taken away by the owner within forty eight hours.

That among the said trunks and chests of the plaintiff taken possession of by the defendants as aforesaid, was a chest containing a large quantity of clothing and other articles of the value of about thirteen hundred dollars.

That the plaintiff has repeatedly demanded the said trunk last mentioned from the employees of the defendants at the usual place of delivery of such articles, and has offered to pay the sum charged by the defendants for the care and custody thereof, but the defendants neglected and refused to deliver the same to the plaintiff, and admitted their inability to deliver the same, whereby the same has become wholly lost to the plaintiff.

Wherefore the plaintiff demands judgment against the defendants for his damages to the amount of fifteen hundred dollars.

The defendant McDonald alone was served with process, and his answer constituted, in effect, a general denial.

By stipulation in writing between the plaintiff and the defendant McDonald the summons and complaint were amended by the striking out of the name of Robert Murray, as one of the defendants and inserting the name of John Daly as defendant in lieu of said Murray.

The action was tried at the trial term before a justice of this court and a jury.

At the close of plaintiffs case defendant's counsel moved for a dismissal of the complaint, for the reasons:

I. Because by the statutes the defendants were the mere servants of the commissioners of emigration, and could not

be made liable for any baggage delivered into Castle Garden until it was checked by the railroads represented by the agency.

II. Because the complaint alleged a delivery to defendants on board of the vessel, which had not been proved, and such allegation could not be sustained by proof of delivery in the garden.

III. That, if these defendants were liable at all, it was a joint liability which could not be severed, and all must be sued and served, or the action could not be maintained.

IV. That, by statute, these defendants could not be made liable for any city baggage not intended for inland transportation, this baggage being under the sole control of the commissioners of emigration.

The court denied the motion to which defendant's counsel duly excepted.

The evidence thereupon introduced showed that at the time alleged, to wit, May 24th, 1867, the defendants, McDonald, Van Ness, and Daley, were jointly engaged in a kind of business in the interior of Castle Garden, which appeared to have been as follows: McDonald represented the Pennsylvania Railroad, Van Ness the Erie, and Daley the New York Central. For the benefit of these roads in soliciting travel, and their convenience in booking passengers and receiving and checking their baggage, these parties, known as the railroad agency, were admitted into Castle Garden for that purpose, to the exclusion of all other parties. These railroad agents (the defendant's) derived a profit by way of a commission or allowance upon the tickets sold by them. It appeared that commissioners of emigration allotted to these agents a portion of their premises in which to transact their business, and imposed upon them as a condition of the privileges accorded to them, the duty of receiving, taking charge of and delivering the baggage and effects of the emigrants who intended to remain in the city, as well as of those who purchased tickets for those railroads, and the commissioners

allowed the defendant's to charge ten cents for each package which remained in their custody over forty eight hours, according to one witness, or twenty four hours according to defendants testimony. The money thus received went to the individual benefit of the defendant's, and made part of a general fund, which after paying the expenses of labor, &c., was divided among them. If the expenses had exceeded the profits the defendant's would have had to pay them.

It also appeared that under another regulation made by the commissioners of emigration it was the duty of one Capt. Hall to convey the baggage of the emmigrants from the steamer to Castle Garden, and that the employees of Capt. Hall checked such baggage before it was taken from the steamer.

After the close of the evidence on both sides plaintiff's counsel moved to strike out the name of Nicholas Muller in the complaint, as he had put it in on the information that he was one of the railroad agents at the time the baggage was lost, and it appeared from the testimony in the case that he was not an agent at that time.

The court granted the motion, to which defendant's counsel duly excepted.

The defendant's counsel then requested the court to dismiss the complaint and to direct a verdict for the defendants, for the reasons urged by him on the motion for a non-suit and for the additional reason: that it appeared from the evidence that the defendants were the mere agents in all cases of either the railroad companies they represented or the commissioners of emigration, and could not be personally charged in this case. The court refused so to do, to which defendant's counsel duly excepted.

The court, on motion of counsel for the plaintiff, directed the jury to find a verdict for the plaintiff against the defendants John McDonald, Cornelius Van Ness, and John Daley, and the jury, thereupon, under the direction of the court, render-

ed a verdict for the plaintiff, and assessed the damages at $879.

The court then ordered that the exceptions taken by the defendants be heard at the general term of this court in the first instance, and that judgment in the mean time be suspended.

MALCOLM CAMPBELL, *attorney for plaintiff.*
CHARLES C. BIGELOW, *attorney for defendants.*

*By the court,* FREEDMAN, J.—Under the statutes in force at the time of the commencement of this action the commissioners of emigration were public officers of the state government, whose powers and duties were strictly defined by law. As such officers they had no power to make any contract for the acceptance, safe keeping, or return of the baggage of any person. The rules and regulations prescribed by them, pursuant to the authority conferred upon them by statute, for the landing of emmigrants and their baggage, must be deemed to have been established for the general good and better protection of emmigrants arriving at the port of New York, but if such rules and regulations have failed to protect the plaintiff it is a misfortune for which he has no remedy against the state or the commissioners in their official character, for the assumption by the government of control over such matters cannot be held to operate as a contract of general indemnity (*Murphy* agt. *The Commissioners, &c.,* 28 *N. Y.,* 134).

To enumerate the instances in which the commissioners, or any of them, might become individually liable, would in the present case be a work of supererogation. Nor is it necessary to discuss how far and under what circumstances the doctrine of respondeat superior should be applied to the several railroad companies, who are represented at Castle Garden by the defendants. The only question to be deter-

mined in this case being whether the verdict directed against the defendants' named can be permitted to stand.

Passing over the questions arising from the change and substitution of parties, and the non-service of process upon two of the defendants, who were brought into court in a summary way, I shall at once proceed to examine whether upon the proofs adduced in support of the allegations of the complaint a personal liability has been established on the part of the defendants, and for the purposes of such examination I will assume, without further inquiry, that in consequence of the manner in which they transacted their business at Castle Garden, as the so-called railroad agency, they were personally responsible, to some extent at least, for the safety of baggage coming into their possession, and belonging to emmigrants who intended to remain in the city of New York.

By the complaint defendants stand charged as carriers, who, against plaintiffs consent, had taken possession of his baggage and assumed the duty of safely carrying and keeping the same. Proof of a compulsory taking of the baggage from plaintiffs possession by the defendants and a refusal on their part to restore it, would consequently have been sufficient, without any proof of its subsequent fate, to enable plaintiff to recover. But plaintiff's evidence wholly failed in this respect, for it showed that if there was any compulsory taking at all it was done by Capt. Hall, whose duty it was to convey the baggage to Castle Garden, and who, in the performance of such duty, acted under the regulations established by the commissioners, and not under any authority, express or implied, from defendants. If there was no compulsory taking, the action being in the form of trover for a conversion and not for a mere negligent loss, will not lie against a carrier or even a bailee, except upon proof of an absolute appropriation of the property ·by the carrier or bailee to his own use, or, what is equivalent, parting with it to others without authority from the owner (*Devereux* agt *Barclay*, 2 *Barn. & Ald.*, 702; *Stephenson* agt. *Hart*, 4

*Bing.*, 476: *Youl* agt. *Harbottle, Peake's Cas.*, 49 ; *Sublock* agt. *Inglis*, 1, *Stark*, 154).

For mere negligent loss the only forms of remedy formerly were either a special action on the case for a breach of the public duty of carrying and delivering safely or of assumpsit for a breach of the undertaking so to carry and deliver (*Ross* agt. *Johnson*, 5 *Burr.*, 2825 ; *Anon* agt. *Salk.* 665).

In *Tolano* agt. *The National Steam Navigation Co.* (5 *Rob.*, 326), this was held by the court to constitute a substantial difference in the cause of action, which a plaintiff is bound to observe in the statement of facts constituting the complaint (*Code* § 142, *subd.* 2), if he seek to recover for mere non-delivery or loss.

If this doctrine is sound law under our present practice, there was at the time the plaintiff rested his case a total failure of proof as regards the cause of action alleged in the complaint, and the motion for a non-suit should have been granted, especially as no motion was made by plaintiff for leave to amend.

But aside from this objection, which may be open to the criticism of being of a technical nature, the evidence appears to be altogether insufficient to fasten any liability upon the defendants. If in consequence of the manner in which, and the circumstances under which they transacted their business at Castle Garden, they are to be considered as bailees without hire of the city baggage of emmigrants, they can be held liable only upon proof of want of ordinary care in keeping it, or of an actual subsequent appropriation of it to their own use. But in either case it is absolutely necessary to establish, as the foundation of the liability, and by competent proof in the first instance, that the baggage came into their possession for the purpose of being kept by them subject to the call of the owner. Upon this point the evidence shows that the plaintiff saw the missing box checked by some person unknown to him on board of the vessel on which he arrived, and that he received a check therefor. But he was unable

to state whether or not the check thus received was a duplicate of the strap-check, which he saw attached to the box. There was also some evidence which had a tendency to show that a mistake occurred in the checking of this box. Plaintiff testified that he saw all his pieces landed by a lighter (commanded by Capt. Hall) upon a wharf inside of Castle Garden, over which it appeared the commissioners of emigration had control, and to which all their employees, who were quite numerous, as well as the defendants, had free access; but that he did not count his pieces after they had been discharged from the lighter, although he was positive that all the large boxes and trunks (which included the box in question) went into Castle Garden. Edward Murphy, called as a witness on the part of plaintiff, testified he was employed by the railroad agency as baggage-master, and as such had charge of the whole baggage, which included railroad as well as city baggage, that he presumed he was on the wharf when the baggage came in from the vessel on which plaintiff had arrived, but that he never saw plaintiffs missing box. It also appeared that plaintiff did not discover his loss for ten or twelve days. All these facts taken and weighed together and considered in connection with the Castle Garden regulations, as far as they were made to appear, fall very much short of establishing that there was, in point of fact, such a delivery by Capt. Hall to the defendants, and an acceptance on their part, of the box in question as is necessary for the creation of a legal liability founded thereon. Defendant's exceptions to the refusal of the court to dismiss the complaint, and to the direction of the verdict should be sustained, and a new trial ordered with costs to the defendants to abide the event.